IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DANNY L THOMPSON,** | ] | |
| | ] | |
|     **Plaintiff,** | ] | |
| | ] | |
| v. | ] | 2:16-cv-01620-KOB |
| | ] | |
| **ALLSTATE INSURANCE COMPANY,** | ] | |
| | ] | |
|     **Defendant.** | ] | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Allstate Insurance Company's motion for summary judgment (doc. 24), and motion to strike a portion of Plaintiff's brief in opposition to the motion for summary judgment (doc. 31 at 6). Plaintiff Danny Thompson was in a car accident that injured him and wrecked the car he was driving. Allstate, the insurer of the car at fault in the accident, sent Mr. Thompson a $300 check, which stated on its face that it was in full settlement of all bodily injury claims, and Mr. Thompson cashed that check. After cashing the check, Mr. Thompson made a bodily injury claim to Allstate, which Allstate denied because the check was a full settlement of any bodily injury claims arising from that accident. Mr. Thompson, however, contends that Allstate's insurance adjuster had told him that, despite the language printed on the check, it was for the inconvenience of having to rent a replacement car, not for his bodily injuries. He sues Allstate for fraud. (Doc. 1 at 5–6).

The court WILL DENY the motion to strike part of Mr. Thompson's brief. To the extent Mr. Thompson relies on additional misrepresentations to support the fraudulent misrepresentation claim he raised in his complaint, the court rejects the argument that Federal

Rule of Civil Procedure 9(b) requires a plaintiff to allege every misrepresentation on which he will rely. To the extent Mr. Thompson argues that the facts support a fraudulent suppression claim he did not plead in his complaint, the court will disregard that argument.

The court WILL DENY the motion for summary judgment because genuine disputes of material fact exist about whether Allstate's agent made misrepresentations about the release language, and whether Mr. Thompson reasonably relied on those misrepresentations in cashing the check.[1]

## I.     BACKGROUND

In deciding a motion for summary judgment, the court must view all evidence and factual inferences drawn from it in the light most favorable to the non-moving party. *Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). The court will describe the facts in the light most favorable to the non-movant here, Mr. Thompson. The court draws its facts from the statements of undisputed facts as well as evidentiary submissions made by Allstate and Mr. Thompson.

On January 24, 2016, Mr. Thompson and his then-wife, Erica Mixon, were in Ms. Mixon's car when Justin Curry, driving a car insured by Allstate, rear-ended them. (Doc. 25 at 2; Doc. 26-1 at 35, 58–62). Two days later, on January 26, 2016, Ms. Mixon and Mr. Thompson called Allstate to notify them of the accident and request a rental car, because their only car had been wrecked in the accident. (Doc. 26-1 at 78, 86, 97; Doc. 30-1 at 127). Mr. Thompson testified that Ms. Mixon always spoke with the Allstate representative while he

---

[1] Mr. Thompson's complaint raised two claims: (1) a fraud claim on his own behalf ("Count One"); and (2) a fraud claim "on Behalf of a Class of Persons Similarly Situated" ("Count Two"). (Doc. 1 at 5–6). The court already dismissed Count Two, so all that remains is Count One—the individual fraud claim. (*See* Doc. 11).

listened on speakerphone, and he never had a conversation with any Allstate representatives.²
(Doc. 26-1 at 83, 88).

Mr. Thompson and Ms. Mixon made several phone calls to Allstate the next day, January 27, 2016. (*See* Doc. 30-1 at 128). At 10:21 and 10:39 am, Ms. Mixon reported to Allstate that Enterprise required a deposit before renting out a car, but she could not afford to pay a deposit. (*Id.*; Doc. 26-1 at 84–85). The Allstate representatives told them that Allstate does not provide deposits for rental cars. (Doc. 26-1 at 85; Doc. 30-1 at 128). Mr. Thompson testified that "the insurance adjuster" also told them: "we going to send you guys some money for the rental car, for . . . inconvenienced [sic]. The money was for our inconvenience." (Doc. 26-1 at 85).

Later the same day, January 27, at 12:30 pm, Ms. Mixon and Mr. Thompson spoke for the first time to an Allstate adjuster named Penelope Butler. (Doc. 30-1 at 129; Doc. 28-2 at 57). According to both Mr. Thompon and Ms. Butler, during that phone call, Ms. Mixon told Ms. Butler that, although she and Mr. Thompson were sore and had neck pain, neither of them were injured and they would not be seeking medical treatment. (Doc. 26-1 at 86; Doc. 28-2 at 57–58). Ms. Butler's notes in Allstate's claim history file state that, during the January 27 phone call, Ms. Butler "offered [Ms. Mixon and Mr. Thompson] each 300.00 for non treated [sic] injuries," and that they "accepted offers." (Doc. 30-1 at 129). The notes also indicate that Ms. Mixon could not rent a car because she lacked a credit card. Mr. Thompson testified that, during the January 27 phone call with Ms. Butler, she offered him and Ms. Mixon each $300 "[f]or inconvenience" related to their trouble obtaining a rental car. (Doc. 26-1 at 85–86).

The same day as those phone calls, January 27, Allstate issued a $300 check to Mr. Thompson. (Doc. 27-1 at 143). The check has the following words printed in all caps on

---

² Although Allstate attempted to depose Ms. Mixon, she never appeared for a deposition. (Doc. 28-1).

3

the upper left hand side: "IN PAYMENT OF: FULL AND FINAL SETTLEMENT OF ANY AND ALL CLAIMS FOR BODILY INJURY ARISING FROM LOSS OF 1/24/2016."

Mr. Thompson testified that on February 1, 2016, when he and Ms. Mixon received the checks, they called Allstate and asked about the language printed on top because the checks were supposed to be for their inconvenience in renting a replacement car. (Doc. 26-1 at 89). He testified that someone—presumably Ms. Butler, who was handling their claim—said "oh, don't worry about it, that's how all our checks come." He testified that, based on that assurance, he and Ms. Mixon cashed their checks and rented a car on February 1. (*Id.* at 90; Doc. 30-2 at 2).

But Allstate's claim history log does not show any phone calls from Ms. Mixon or Mr. Thompson on February 1. (Doc. 30-1 at 128–30). Instead, according to Allstate's log, on February 1, Allstate received three phone calls from check cashing companies seeking to verify the checks. Ms. Butler testified that the claim history would document every phone call and conversation she had with Mr. Thompson and Ms. Mixon, but she did not testify about whether the system automatically logs every call, or if she had to log those phone calls herself. (Doc. 28-2 at 58–59).

Meanwhile, although Ms. Mixon had told Ms. Butler on January 27 that neither she nor Mr. Thompson were injured in the accident and were not planning to seek medical treatment, Mr. Thompson had gone to a medical center "a couple of days" after the accident, "around the time that Ms. Mixon got in touch with the insurance company." (Doc. 26-1 at 75–76). Someone at the medical center prescribed him some painkillers. (*Id.* at 77). Then, on March 10, 2016— more than a month after he cashed the $300 check on February 1—he sought medical treatment at a different medical center. (*Id.* at 104). Mr. Thompson testified that he had suffered a fractured ankle in the car accident, and he received physical therapy and "prescriptions." (*Id.* at

4

58, 105–06). Dana Ogletree, a claims service leader with Allstate, testified that the value of a fractured ankle would be "substantially more" than $300. (Doc. 30-1 at 49).

**II.     DISCUSSION**

Allstate moves for summary judgment and to strike part of Mr. Thompson's brief in opposition to the motion for summary judgment. The court will address the motion to strike first.

1. <u>Motion to Strike Part of Mr. Thompson's Brief</u>

Mr. Thompson's complaint alleged only one misrepresentation by Allstate. (*See* Doc. 1 at 5–6). Specifically, the complaint alleged that on January 26, 2016, Ms. Butler misrepresented to Ms. Mixon that the $300 checks were for their "inconvenience" in obtaining a rental car. The complaint alleged that Ms. Butler's false representation constituted fraud on Mr. Thompson. But at his deposition, Mr. Thompson testified that Ms. Butler made an additional misrepresentation on February 1, 2016, before he cashed his $300 check. (Doc. 26-1 at 89). According to Mr. Thompson, he and Ms. Mixon called on February 1 to ask about the bodily injury language printed on the check, and Ms. Butler said, "oh, don't worry about it, that's how all our checks come." In his brief opposing summary judgment, Mr. Thompson argues that Ms. Butler's statements constitute fraudulent misrepresentation and fraudulent suppression. (Doc. 30 at 5–6).

Allstate requests that the court strike the part of Mr. Thompson's brief in which he contends that Allstate fraudulently misrepresented and suppressed facts. (Doc. 31 at 6). It contends that, because Mr. Thompson's complaint did not allege that Ms. Butler made a misrepresentation of February 1, Mr. Thompson's current reliance on that statement is an impermissible attempt to amend the complaint through briefing. In support of its position, Allstate points to Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud

5

or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allstate seems to assert that, because Rule 9(b) requires a plaintiff to plead a fraud claim with particularity, a plaintiff cannot, at the summary judgment stage, rely on misrepresentations other than the ones set out in the complaint. (Doc. 31 at 6).

The court agrees that Mr. Thompson, in his response brief, raises a new fraudulent suppression theory that he did not first plead in his complaint. Mr. Thompson's complaint did not mention or even hint that Allstate suppressed any facts that it had a duty to disclose. (*See* Doc. 1 at 5–6). To now assert a claim of fraudulent suppression would be to add a completely new fraud theory to the case. Mr. Thompson has not moved to amend his complaint to add a new claim, and "[a] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Nevertheless, this court will not strike Mr. Thompson's argument; instead, to the extent it relates to an unpled claim of fraudulent suppression, the court will ignore the argument.

But the court will consider Mr. Thompson's argument as it relates to his claim of fraudulent misrepresentation. Mr. Thompson's complaint plainly pled a fraudulent misrepresentation claim: he alleged that if he had "known the check was being offered by Allstate as an alleged release and settlement of his bodily injury claim he would not have endorsed the check." (Doc. 1 at 5). The court rejects the suggestion that, to comply with Rule 9(b)'s requirement that plaintiffs plead fraud with particularity, a plaintiff must allege *every* misrepresentation on which he will ever rely.

Allstate contends that Rule 9(b)'s heightened pleading requirement exists to put defendants on notice of the allegedly fraudulent conduct, to protect defendants from frivolous lawsuits, to eliminate fraud actions "in which facts are learned after discovery," and to protect

the defendant's goodwill and reputation. (Doc. 31 at 5–6). The court notes that the only case that Allstate cites in support of its argument does *not* say that Rule 9(b) exists to protect defendants from fraud claims "in which facts are learned after discovery," but instead that the rule exists "to eliminate fraud actions in which *all* the facts are learned after discovery." *United States ex rel. Stinson, Lyons, Gerlin & Bustamente, P.A. v. Blue Cross Blue Shield of Ga.*, 755 F. Supp. 1055, 1057 (S.D. Ga. 1990) (emphasis added).

This is not a case in which "*all* the facts are learned after discovery." *Id.* Mr. Thompson alleged in his complaint that Allstate committed fraud by representing to him that the $300 check was for the "inconvenience" of obtaining a rental car. (Doc. 1 at 5). Now, he alleges that Allstate misrepresented the purpose of the check on two separate days—before issuing him the check and after he received it. Mr. Thompson's fraudulent misrepresentation claim remains the same essential fraudulent misrepresentation claim he made in his complaint, with the addition of one misrepresentation. The court declines to strike or disregard Mr. Thompson's argument merely because his complaint did not set out *every* statement on which he now relies. The court WILL DENY the motion to strike part of Mr. Thompson's response brief.

2. Motion for Summary Judgment

Allstate contends that summary judgment is appropriate because Ms. Butler's use of the word "inconvenience" was not a misrepresentation; even if the word "inconvenience" was a misrepresentation, Mr. Thompson could not reasonably have relied on it; and the defense of accord and satisfaction bars Mr. Thompson's claim. (Doc. 25 at 9–12).

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When a district court reviews a motion for summary judgment it must

determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *Id.* In reviewing the evidence submitted, the court must view all evidence and factual inferences drawn from it in the light most favorable to the non-moving party. *See Augusta Iron & Steel Works, Inc.*, 835 F.2d at 856.

Under Alabama law, a misrepresentation claim requires (1) a misrepresentation, (2) of a material fact, (3) on which the plaintiff reasonably relied, and (4) that damaged the plaintiff. *AmerUs Life Ins. v. Smith*, 5 So. 3d 1200, 1207 (Ala. 2008). In Alabama, a claim of fraudulent misrepresentation includes a claim of fraud in the inducement, which "consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action." *Ala. River Grp., Inc. v. Conecuh Timber, Inc.*, 2017 WL 4324889, at *10 (Ala. Sept. 29, 2017).

Alabama's reasonable reliance standard "provide[s] a mechanism . . . whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997); *AmerUS Life Ins. Co.*, 5 So. 3d at 1208.

But the Alabama Supreme Court has also held that "[a] release obtained by fraud is void." *Taylor v. Dorough*, 547 So. 2d 536, 540 (Ala. 1989).[3] In *Taylor*, the plaintiff was injured

---

[3] The *Foremost* decision overruled a July 28, 1989 decision that had changed the standard under which a factfinder determined whether a plaintiff's reliance was reasonable. *See* 693 So. 2d at 421. The *Foremost* decision returned the state of the law on reasonable reliance to where it had stood before that 1989 decision. *See Potter v. First Real Estate Co., Inc.*, 844

8

in a car accident caused by the defendant insurance company's insured. *Id.* at 537. Although the defendant's agent knew that the plaintiff had an attorney representing her, the agent dealt with her directly. *Id.* at 540. The insurance company's agents presented two checks to the plaintiff with language "purporting to release the [plaintiff's] claims against [the person who caused the accident]," and the plaintiff signed the back of the checks. *Id.* at 537. But the plaintiff testified that she did not see the release language because the agent presented the checks facedown. *Id.* The plaintiff also signed a document titled "Release in Full of All Claims," but she testified that the agent concealed all of the document "except the signature lines, evaded her questions about the document, and told her that she had to sign it for the checks to be released." *Id.* The plaintiff and her husband took the checks, which had the release language on the front, and cashed them, testifying that they did not read the release language. *Id.*

The Alabama Supreme Court stated that the plaintiffs' failure to read the release and the checks did not "necessarily defeat their attempt to avoid the release, in light of [the agent]'s alleged misrepresentations and sharp dealing." *Taylor*, 547 So. 2d at 541. The Court went on: "If a release is obtained from one in a weak condition, without advisers, for a sum grossly less than would be a fair and just compensation, a jury question of fraudulent inducement is presented." *Id.* (citing *Louisville & Nashville R.R. v. Huffstutler*, 50 So. 146 (Ala. 1909)).[4]

---

So. 2d 540, 549–50 (Ala. 2002) (stating that *Foremost* was consistent with pre-1989 precedent). So Alabama state court decisions from before July 28, 1989 remain binding precedent on the question whether a plaintiff's reliance on a misrepresentation was reasonable. The Alabama Supreme Court decided *Taylor* on June 23, 1989, and it remains binding precedent.

[4] The *Taylor* case also states that "[g]enerally, a party must return the consideration given for a release as a condition precedent to challenging the release as having been fraudulently obtained." 547 So. 2d at 540. Neither party discusses the *Taylor* decision, much less that statement about return of consideration, so the court will not address it further.

*i. The Existence of Genuine Disputes of Material Fact*

With that legal backdrop in mind, the court must determine whether any genuine disputes of material fact exist that preclude summary judgment in favor of Allstate. *See* Fed. R. Civ. P. 56(a). Allstate contends that no genuine disputes of material fact exist because Ms. Butler made no misrepresentations to Mr. Thompson. (Doc. 25 at 9; Doc. 31 at 7). The court disagrees, and concludes that genuine disputes exist about (1) whether Ms. Butler's use of the word "inconvenience" related to Mr. Thompson and Ms. Mixon's need to rent a car, and (2) whether Ms. Butler told Mr. Thompson not to worry about the release language printed on the front of the check.

Allstate concedes that a dispute exists about whether Ms. Butler used the word "inconvenience" on January 27, during Ms. Butler's first conversation with Mr. Thompson and Ms. Mixon. (Doc. 25 at 9). But it contends that the dispute is not material because she could have used the word to describe Mr. Thompson's bodily injury. (*Id.*). Mr. Thompson, however, testified that someone—possibly Ms. Butler—told him and Ms. Mixon that "we going to send you guys some money *for the rental car*, for . . . inconvenienced [sic]." (Doc. 26-1 at 85) (emphasis added). He also testified that Ms. Butler specifically offered him and Ms. Mixon each $300 for the inconvenience of renting a car. (*Id.* at 85–86). A jury could believe Mr. Thompson's account that one or more people at Allstate told him the checks were for the inconvenience of renting a replacement car.

Next, Allstate contends that no genuine dispute exists about whether Ms. Butler told Mr. Thompson and Ms. Mixon not to worry about the release language printed on the front of the check. (Doc. 31 at 7). Mr. Thompson testified that on February 1, after he and Ms. Mixon

received their checks, they noticed the release language and called Ms. Butler to ask about it, because they were under the impression the money was for the rental car. (Doc. 26-1 at 89). According to Mr. Thompson, Ms. Butler told them, "oh, don't worry about it, that's how all our checks come." (*Id.*).

Allstate makes two arguments to discount Mr. Thompson's testimony. First, it states that in its motion for summary judgment, it identified as an undisputed fact that its claim history log contains a list of *all* conversations between Allstate and Mr. Thompson and Ms. Mixon. (Doc. 31 at 7). Allstate argues that because Mr. Thompson did not expressly contest *that* fact, and because the claim history log does not list a phone call between Allstate and Mr. Thompson or Ms. Mixon on February 1, no evidence exists that Ms. Butler ever made that statement.

But although Mr. Thompson did not identify that sentence from Allstate's brief as a disputed fact, Mr. Thompson *did* state in his brief in opposition to the motion for summary judgment that before he and Ms. Mixon cashed their checks on February 1, they called Allstate to ask about the release language, and Ms. Butler told them not to worry about it. (Doc. 30 at 3–4). The court finds that Mr. Thompson put the court on sufficient notice about the disputed fact. And because Mr. Thompson *testified* that Ms. Butler made that statement, evidence exists to create a genuine dispute.

Second, Allstate contends that Mr. Thompson's testimony about the February 1 conversation with Ms. Butler is false. (Doc. 31 at 6). But the question of the truth of Mr. Thompson's deposition testimony presents a question for the jury to decide at trial, not the court at summary judgment. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge, whether [she] is ruling on a motion for summary judgment or for a directed verdict.") (quotation marks omitted).

*ii. Whether Allstate is Entitled to Judgment as a Matter of Law*

Allstate contends that it is entitled to judgment as a matter of law because, even if Ms. Butler's use of the word "inconvenience" was a misrepresentation, Mr. Thompson could not have *reasonably* relied on it. (Doc. 25 at 10–11). Again, the court disagrees.

First, Allstate argues that Mr. Thompson's reliance was not reasonable because, under *Foremost*, the release language on the check clearly and unambiguously contradicted any oral misrepresentations. *See Foremost Ins. Co.*, 693 So. 2d at 421 ("[T]he trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms."). But the court concludes that summary judgment is not appropriate because, under *Taylor*, a jury could find the release void because of misrepresentation.

The check did contain clear release language, stating on its face: "IN PAYMENT OF: FULL AND FINAL SETTLEMENT OF ANY AND ALL CLAIMS FOR BODILY INJURY ARISING FROM LOSS OF 1/24/2016." (Doc. 27-1 at 143). But Mr. Thompson testified that after he read that language, he and Ms. Mixon called Allstate to inquire about it because they had understood that the check was for the inconvenience of renting a car. (Doc. 26-1 at 89). And according to Mr. Thompson, Ms. Butler told them not to worry about the release language because "that's how all our checks come." (*Id.*).

Construing the facts in the light most favorable to Mr. Thompson, he was suffering from an as-yet untreated (and undiagnosed) fractured ankle; the value of a fractured ankle would be

12

"substantially" higher than the $300 that Allstate says covered his bodily injury claims; Allstate's agent or agents repeatedly misrepresented the purpose of the $300 check; Mr. Thompson and Ms. Mixon inquired about the release language; and Allstate's agent told them not to worry about the release language because "that's how all our checks come." (Doc. 26-1 at 58, 85–86, 89; Doc. 30-1 at 49). As in the *Taylor* case, the fact that Mr. Thompson was capable of reading—and in fact did read—the release does not "necessarily defeat [his] attempt to avoid the release, in light of [Ms. Butler]'s alleged misrepresentations and sharp dealing." *Taylor*, 547 So. 2d at 541.

Allstate also argues that Mr. Thompson could not have reasonably relied on any misrepresentations because he did not own the car that was wrecked in the accident, so he must have known that he was not entitled to payment for renting a replacement car. (Doc. 25 at 11). Again, the court concludes that is a question for the jury. Mr. Thompson did not own the car, but his then-wife, Ms. Mixon, did. (*See* Doc. 26-1 at 35). And although Ms. Mixon held the title to the car, it was their household's only car. (*Id.* at 97). Both Mr. Thompson and Ms. Mixon were inconvenienced by the damage to that one car and the need to rent a car. While a jury might conclude that Mr. Thompson could not have reasonably believed that Allstate would pay him *and* Ms. Mixon for the inconvenience of replacing Ms. Mixon's car, a jury could just as likely conclude that, under these circumstances, Mr. Thompson reasonably believed Allstate's representations that it would pay them each for the "inconvenience" arising from damage to the household car.

### iii. Accord and Satisfaction Defense

Finally, Allstate contends that the defense of accord and satisfaction bars Mr. Thompson's claim. (Doc. 25 at 12–13). Section 7-3-311 of the Alabama Code provides:

> (a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
>
> (b) . . . the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

Ala. Code § 7-3-311(a)–(b).

The defense of accord and satisfaction requires that the defendant have acted in "good faith." *Id.* § 7-3-311(a)(i). "'Good faith' means honesty in fact in the conduct or transaction concerned." *Id.* § 7–1–201(20). A defendant acts in good faith by "offer[ing] a check with the intent to honestly enter into an accord and satisfaction while observing reasonable commercial standards of fair dealing." *Ex parte Meztista*, 845 So. 2d 795, 799 (Ala. 2001) (quotation marks omitted).

As discussed above, Mr. Thompson has created a genuine question of material fact about whether Allstate's agent misrepresented the import of the release language printed on the face of his $300 check, inducing him into releasing his bodily injury claims for much less than they were worth. As a result, a jury could find that Allstate did not act in good faith. Allstate is not entitled to summary judgment based on the defense of accord and satisfaction.

### III. CONCLUSION

Accordingly, the court WILL DENY Allstate's motion to strike part of Mr. Thompson's brief and WILL DENY Allstate's motion for summary judgment. The court will enter a separate order consistent with this opinion.

14

**DONE** and **ORDERED** this 30th day of May, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE